UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ROSARIA ANNINOS

                    Plaintiff,

        -against-

CAROLYN W. COLVIN
Acting Commissioner, Social Security
Administration,

                    Defendant.
-------------------------------------------------------X
FEUERSTEIN, J.

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★    SEP 3 0 2015    ★

LONG ISLAND OFFICE

**ORDER**
13-CV-3133 (SJF)

        Rosaria Anninos ("plaintiff" or "claimant") commenced this action under

42 U.S.C. § 405(g) seeking judicial review of the final determination of defendant Commissioner

of Social Security Administration ("Commissioner") denying plaintiff's application for disability

benefits. The parties now move for judgment on the pleadings under Rule 12(c) of the Federal

Rules of Civil Procedure. For the reasons that follow, the Court denies both motions, and

remands the matter for further proceedings.

                    I.        BACKGROUND

    A.    Administrative Proceedings

        On May 28, 2010, plaintiff filed an application for social security disability benefits for a

period beginning January 10, 2010 (onset date), claiming she was unable to work because of

vision problems in her left eye. [Docket Entry No. 19] (Transcript of Administrative Record

("Tr.")) 56. On July 19, 2011, the Social Security Administration ("SSA") denied plaintiff's

application on the ground that she was not disabled under the Administration's rules. Tr. 68.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on

May 4, 2011 before ALJ Ronald Waldman. *Id.* at 1–30, 83, 84–98. Plaintiff appeared with her attorney and testified. *Id.* at 1–30.

On September 8, 2011, the ALJ issued a decision (the "ALJ Decision") finding that plaintiff was not disabled within the meaning of the Social Security Act and therefore not entitled to disability insurance benefits. *Id.* at 53–66. The Appeals Council denied plaintiff's request for review on May 3, 2013. *Id.* at 31–33.

On May 30, 2013 plaintiff commenced this action under 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's final determination. [Docket Entry No. 1]. The Commissioner filed an answer on December 3, 2013, and served plaintiff with the administrative record on December 6, 2013 [Docket Entry Nos. 8, 9]. On May 14, 2014, the parties moved for judgment on the pleadings [Docket Entry Nos. 13, 16].

 B. Evidence

  1. May 4, 2011 Hearing Before Administrative Law Judge Ronald Waldman.

Plaintiff, born April 1, 1951, worked as a real estate broker for approximately twenty-nine (29) or thirty (30) years. *Id.* at 56, 67. Plaintiff has an associate's degree in business from Kingsborough Community College. *Id.* at 5.

On to January 10, 2010, plaintiff left work due to vision problems in her left eye. *Id.* at 56, 22–23. When she arose that morning, she "felt like [she] was looking through a bow tie, that's squeezed in the middle." *Id.* at 8. Her physician referred her to a specialist who performed surgery on March 4, 2010, but damaged her left retina, resulting in a lengthier surgery to repair her retina on March 18, 2010, and another surgery on October 7, 2010. *Id.* at 8–9. After each surgery, she was required to lay face down to for a period of two (2) to three (3)

weeks. *Id.* at 9. She also had to attend bi-weekly follow-up visits. *Id.* These surgeries caused her to lose almost all of her sight in her left eye. *Id.* at 10–11.

She testified that her vision problems prevented her from performing essential job functions, such as driving, using a computer, and concentrating at meetings. *Id.* at 7–8, 11, 16, 119–20. She explained that although she had formerly worked for hours at a time in front of a computer, she could now spend at most thirty (30) or forty (40) minutes doing computer work, and had difficulty reading because her right eye became tired. *Id.* at 13–15. At office meetings, she would become nauseous due to the strain. *Id.* at 16.

She testified that she was afraid to drive long distances, following recent household accidents, like falling down stairs, and cutting herself. *Id.* at 11, 14–15. She relied upon her husband to drive. *Id.* at 11. The ALJ asked her to clarify her decision not to drive:

> Q: But if I'm hearing you correctly, you have made a personal choice not to drive because of your fear about what might happen and the fact that you are not seeing things in the same manner, which you are used to seeing?
>
> A: Right. The fear also is in real estate, you do either have people follow you or people get in the car with you, which I will not take the responsibility to have people in the car, for that reason.

*Id.* at 11–12. Plaintiff further explained that her specialist recommended against driving, generally. *Id.* at 14. He suggested that, "If [she] were to drive, it would be a local drive, not parkways." *Id.* at 12. Additionally, he cautioned her against driving in the dark. *Id.* at 13. Plaintiff testified that she was afraid to walk down stairs and suffered from loss of balance. *Id.* at 16, 27.

Plaintiff's vision problems did not affect her ability to use the phone, and she stated that if she received training, she could work as a telemarketer. *Id.* at 17, 18–19. She could do most household chores, except cleaning and laundry; the fumes from cleaning products and dust caused her left eye to tear up, while laundry required her to descend the stairs. *Id.* at 19–20.

Plaintiff was taking medication for high cholesterol and high blood pressure and Cymbalta for depression. *Id.* at 21. She had suffered from depression for approximately three (3) years prior to the May 4, 2011 hearing. *Id.* at 22.

### 2. Medical Evidence

On February 5, 2010, plaintiff saw Dr. Glenn Stoller, M.D. complaining of metamorphosia and blurry/cloudy vision in her left eye. *Id.* at 170. Dr. Stoller found that she had 20/25 vision in her right eye, 20/50 vision in her left eye, and determined that she had a macular hole in the left eye. *Id.* at 170–71. Dr. Stoller further noted a medical history of borderline high cholesterol, hypertension, sleep apnea, and depression. *Id.* at 170, 145. When Dr. Stoller examined plaintiff on February 26, 2010, she again complained of vision problems in her left eye. *Id.* at 145. Dr. Stoller cleared her for surgery. *Id.* at 147.

On March 4, 2010, Dr. Stoller surgically repaired her left macula. *Id.* at 152–53. Plaintiff left surgery in stable condition. *Id.* at 153. On March 11, 2010, Dr. Stoller reported that plaintiff was "doing very well." *Id.* at 166–67.

Dr. Stoller performed a second surgery on plaintiff's left eye on March 18, 2010, this time for rhegmatogenous retinal detachments and cataracts. *Id.* at 141–43. Plaintiff again left surgery in stable condition. *Id.* at 142.

On or about April 23, 2010, plaintiff complained to Dr. Stoller of redness, blurring, and discomfort in her left eye. *Id.* at 158. Dr. Stoller determined that she had 20/20 vision in her right eye, and 20/400 in her left eye, and that she was "doing well." *Id.* at 158–59. She returned on May 21, 2010, complaining of a sharp, shooting pain and tearing in her left eye. *Id.* at 156–57. On June 11, 2010, Dr. Stoller noted that plaintiff was "doing much better," reported no discomfort, and had clear vision, with 20/20 vision in her right eye, and 20/400 in her left eye. *Id.* at 154.

On August 13, 2010, Dr. Stoller recommended that plaintiff be considered for disability, stating that plaintiff "describes having great difficulty driving feeling that her peripheral vision in her left eye is impaired," and that she reported eye strain after working at a computer. *Id.* at 200.

A residual functional capacity (RFC) questionnaire for vision impairment completed by Dr. Stoller on April 21, 2011, diagnosed "retinal detachment," and reported 20/20 vision in plaintiff's right eye, and 20/400 in her left eye. *Id.* at 181. He listed as her symptoms, "decreased vision left eye," and indicated that plaintiff could occasionally perform work activities involving, near acuity, far acuity, accommodation, color vision, and field of vision, and could constantly perform work involving depth perception. *Id.* at 182. He did not respond to the question regarding plaintiff's field of vision. *Id.* Dr. Stoller indicated that she was not capable of avoiding ordinary workplace hazards, "such as boxes on the floor, doors ajar, approaching people or vehicles." *Id.* at 182. He indicated that plaintiff had difficulty walking up or down stairs and working with large objects. *Id.*

However, he indicated that she was capable of "working with small objects such as those involved in doing sedentary work," that she could "frequently" lift and carry objects weighing as

much as fifty (50) pounds, and that she would not require unscheduled breaks during an ordinary eight (8)-hour work day and that she would "rarely" suffer symptoms that would affect her attention and ability to concentrate. *Id.* at 182–83.

The record contains another unsigned, undated RFC questionnaire for vision impairment, attached to Dr. Stoller's. *Id.* at 184–85. It diagnosed plaintiff with "glaucoma ocular surface disease," that plaintiff had blurry, 20/400 vision in her left eye and could constantly perform work activities involving near acuity, far acuity, depth perception, accommodation, color vision, and field of vision. *Id.* at 184–85.

The unsigned RFC indicated that she had no difficulty walking up stairs, or working with large objects, but that she would face difficulty working with "small objects such as those involved doing sedentary work," could "frequently" lift objects weighing less than ten (10) pounds, "occasionally" lift objects weighing twenty (20) pounds, "never" lift objects weighing fifty (50) pounds, "occasionally" stoop, "frequently" bend, would not require unscheduled breaks during an ordinary eight (8) hour work day, and would "rarely" suffer symptoms that would affect her attention and ability to concentrate. *Id.* at 186. Finally, it indicated "ocular dryness" as a limitation on her ability to work. *Id.*

Dr. Linell Skeene, M.D. examined plaintiff on April 25, 2011, and indicated that,

> The claimant is able to shower, bathe, and dress independently. The claimant cooks, does laundry, and shopping. The claimant does no cleaning. The claimant watches television in her spare time.

*Id.* at 187–88. Her corrected vision, according to Dr. Skeene, was 20/20 in her right eye, and 20/200 in her left. *Id.* She "appeared to be in no acute distress." *Id.*

Dr. Skeene diagnosed plaintiff with: (1) "Status post surgery for macular degeneration x2 involving the left eye"; (2) "Status post surgery for detached retina of the left eye"; (3) "Blindness of the left eye"; (4) "Hypertension"; (5) "Sleep apnea"; and (6) "Depression." *Id.* at 189. Plaintiff's prognosis was stable. *Id.* Dr. Skeene recommended that plaintiff "continue to followup with her ophthalmologist" and "avoid driving and using heavy machinery due to vision loss in the left eye." *Id.*

Dr. Skeene's "Medical Source Statement of Ability to do Work-Related Activities (Physical)" also forms part of the record. *Id.* at 190–96. In relevant part, it indicates that plaintiff is able to avoid "ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles," and she is able to view a computer screen. *Id.* at 193. However, Dr. Skeene indicated that plaintiff was unable to read very small print or discern between small objects, such as screws and bolts. *Id.* The questionnaire indicates that plaintiff "only has light perception of (L) eye." *Id.* at 193, 195. She is able to: walk without assistance; "climb a few steps at a reasonable pace with the use of a single had rail"; prepare meals; and care for her personal hygiene. *Id.* at 195, 185. Dr. Skeene opined that plaintiff could not go shopping, travel without a companion, walk a block on uneven surfaces, use public transportation, or "sort, handle, or use paper/files" due to her vision problems in her left eye. *Id.*

The record also contains a RFC Questionnaire completed by Dr. Julia Oweis, M.D. dated May 16, 2011, which indicated that she had treated plaintiff since May 13, 2011 and diagnosed plaintiff with macular degeneration and a retinal tear. *Id.* at 203–07. Dr. Oweis checked boxes to indicate that plaintiff's depression and anxiety affected her condition, as did unspecified emotional factors. *Id.* at 204. According to Dr. Oweis, plaintiff was incapable of doing even a

low-stress job, explaining simply that plaintiff "cannot see." *Id.* Her symptoms "constantly" interfered with her "attention and concentration needed to perform even simple work tasks." *Id.* She could only sit or stand for ten minutes at a time before she needed to move around. *Id.* In an eight (8)-hour workday, she could stand or walk for a total of two (2) hours. *Id.* at 205.

Plaintiff would "sometimes" need to use a cane or assistive device for walking. *Id.* at 205. According to Dr. Oweis, she could lift at most ten (10) pounds, and then only "rarely." *Id.* She could only "rarely": look down; turn her head right or left; look up; hold her head in a static position; twist; stoop; crouch or squat; climb ladders; or climb stairs. *Id.* at 206. Moreover, she had zero percent (0%) use of her hands, fingers, and arms because she "cannot focus." *Id.* Dr. Oweis further opined that plaintiff had become depressed and anxious due to her blindness, which limited her ability to care for herself. *Id.* at 207.

C.      ALJ Decision

By decision dated September 8, 2011, ALJ Waldman denied plaintiff's application for benefits because plaintiff had "not been under a disability within the meaning of the Social Security Act [since] January 10, 2010 . . . ." *Id.* at 53–63, 56. The ALJ's decision articulated the five (5)-step sequential analysis set forth in 20 C.F.R. § 404.1520 and set forth findings of fact and conclusions of law. *Id.* at 56–62. Initially, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through June 30, 2012, and had not engaged in "substantial gainful activity" since January 10, 2010, the alleged onset date. *Id.* at 58.

As for step two, the ALJ found that plaintiff suffered from a "severe impairment," 20 C.F.R. § 404.1520 because she suffered from "macular degeneration of the left eye," which "cause[d] more than a minimal effect on her ability to perform basic work activities. However,

8

they do not preclude all work activity." *Id.* Moreover, the ALJ found that although plaintiff suffered from depression, this did not limit her ability to work. *Id.* He emphasized that, plaintiff "twice testified that apart from her visual impairment, she had *no* work-related limitations." *Id.*

In reaching these conclusions, the ALJ considered the four functional areas known as the "paragraph B" criteria. *Id.* He found that she suffered a "mild limitation" in the first, second, and third functional areas, daily living, social functioning, and concentration, persistence or pace, respectively. *Id.* at 58–59. However, he found insufficient evidence to conclude that these mild limitations precluded her from work. *Id.* The ALJ found no evidence of episodes of decompensation, the fourth functional area. *Id.* at 59. In sum, the ALJ concluded that because plaintiff's limitations were "no more than 'mild,'" they were nonsevere under 20 C.F.R. § 404.1520a(d)(1). *Id.*

Next, the ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526)." Tr. 59. Specifically,

> Listing 2.02 requires remaining vision in the better eye after best correction of 20/200 or less. Listing 2.03 required a contraction of peripheral visual fields in the better eye to ten degrees or less from the point of fixation or so the widest diameter subtends an angle no greater than twenty degrees or to twenty percent or less visual field efficiency. Listing 2.04 requires that the visual efficiency of the better eye after best correction is twenty percent or less. There is no evidence that the claimant meets the above criteria.

Consequently, the ALJ found that plaintiff "has the residual functional capacity to perform a full range or work at all exertional levels, but with the following nonexertional limitations: avoid driving, stairs, and exposure to heavy machinery; and avoid small print." Tr. 59.

The ALJ found that the medical evidence did not support plaintiff's allegations of disability. *Id.* at 60.

> More specifically, the medical findings do not support the existence of limitations greater than those reported in the RFC statement above. The record shows that the claimant suffers from degeneration of the left eye in which she has 20/200 vision in the left eye and 20/20 vision in the right eye. She underwent surgical procedures of the left eye in March 2010 and in October 2010. Although the claimant underwent surgery for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms. The record reveals a treatment relationship with ophthalmologist Glen Stoller, M.D. On May 12, 2010 the claimant appeared with complaints of sharp shooting pain in the left eye. She alleged that tearing becomes worse as the day goes on. During a June 11, 2010 [sic], the claimant presented at her ophthalmologist's office with no complaints of pain discomfort, flashes, or photophobia. She reported that she was "doing much better." Objective evidence indicates that [she] had increased visual acuity since the last visit. . . In light of the evidence above, the undersigned finds that [the] claimant should avoid driving, stairs or exposure to heavy machinery; and, avoid jobs that require reading small print.
>
> As for the opinion evidence, the record does not contain any opinions from treating or examining physicians that support that the claimant is disabled or even has limitations greater than those determined in this decision.

*Id.*

The ALJ's decision next discussed Dr. Stoller's findings:

> Treating physician Dr. Stoller opined on August 13, 2010, that the claimant had corrected visual acuity of 20/400 in the left eye and indicated that she would have difficulty performing the functions of her job as a real estate broker. (Exhibit 8F) Dr. Stoller in a Vision Impairment Residual Functional Capacity Questionnaire dated April 21, 2001, indicated among other things that the claimant can work with small objects; and that the claimant's attention and concentration would "rarely" be severe enough to interfere with

attention and concentration needed to perform even simple work
tasks. (Exhibit 5F)

*Id.* at 61.

The ALJ next discussed his reasons for rejecting Dr. Oweis's RFC:

> Dr. Oweis, a physician who examined the claimant in 2011
> submitted a physical Residual Functional Capacity Questionnaire
> which indicated a diagnosis of Left Eye Macular Degeneration and
> further indicated that the claimant suffers from depression and
> anxiety. (Exhibit 10F) Dr. Oweis also indicates that the claimant
> has various exertional limits, including but not limited to being able
> to sit for less than two hours and being limited to walking two
> blocks. Dr. Oweis provides no support for these limitations. The
> undersigned contacted Anthony Camisa, the attorney for the
> claimant and sought Dr. Oweis'[s] treating records and an
> explanation for the articulated exertional limits. (Exhibit 9E)
> However, no documents were ultimately produced. Accordingly,
> the undersigned affords Exhibit 10F no weight.

*Id.* The ALJ also addressed the findings of Dr. Stojan:

> On April 19, 2011, the claimant underwent an orthopedic
> evaluation as completed by consultative examiner Dr. Albert Stojan.
> He indicated that the claimant only has light perception in the left
> eye. Upon assessment, Dr. Stojan opined that the claimant should
> avoid ordinary hazards in the workplace, such as boxes on the floor,
> doors ajar, or approaching people [or] vehicles. He concluded that
> she is not able to read small print; however, she is able to view a
> computer screen. He determined that she is unable to determine
> differences in shape and small objects such as screws, nuts and bolts.
> He concluded that she is unable to shop, travel with a companion,
> walk a block at a reasonable pace on rough and uneven surfaces,
> unable to use public transportation and unable to sort, handle or use
> paper files. However, portions of this opinion are also directly
> contradicted by the claimant's testimony and this given little weight.
> For example, the claimant testified that she has no difficulties taking
> public transportation. The claimant did not indicate that she had any
> problems walking (other than on stairs). The claimant
> acknowledged that she shops, watches T.V., drives, showers,
> bathe[s], cooks, does laundry and dresses independently and attends
> congregational services. She admitted that she wishes to get

11

temporary disability until she fully recovers and goes back to work. (Exhibits 3E, 6F).

*Id.*

In sum, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.*

Regarding the fourth step, the ALJ found that plaintiff is unable to perform any past relevant work as a real estate broker, 20 C.F.R. § 404.1565. *Id.* Proceeding to step five, the ALJ found that: (1) plaintiff was an individual of advanced age on the alleged onset date, 20 C.F.R. § 404.1563; (2) plaintiff has a high school education and can communicate in English, 20 C.F.R. § 404.1564; (3) because plaintiff is not disabled, the transferability of her job skills was not material to the determination of her disability under the Medical–Vocational Rules found in 20 C.F.R. Part 404, Subpart P, Appendix 2; and (4) "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform," 20 C.F.R. § 404.1569(a). *Id.* at 62. He explained that:

> If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical–vocational rules direct a conclusion of either "disabled" or "not disabled" depending on the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical–vocational rules are to be used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical–Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. A finding of "disabled" is therefore appropriate under the framework of section 204.00 in the Medical–Vocational Guidelines. The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. These limitations so narrow the range of work the claimant might otherwise perform that a finding of "disabled" is appropriate under the framework of section 204.00 in the Medical–Vocational Guidelines. This conclusion is further supported by SSRs 96-8p and 96-9, which detail a claimant's residual functional capacity is based [sic] on sustained work activities on a regular and continuing basis (e.g., an eight-hour day, five days per week or equivalent schedule) and a substantial loss of ability to work at that level due to other restrictions substantially erodes the above occupational base and would justify a finding of disability.

*Id.* at 62. The ALJ concluded that plaintiff was not disabled between January 10, 2010 through the date of the decision, 20 C.F.R. § 404.1520(g). *Id.*

## II. DISCUSSION

Plaintiff advances two arguments in support of her motion for judgment on the pleadings. First, plaintiff argues that the ALJ Decision sets forth contradictory findings with respect to step five (5). Separately, she argues that her inability to travel renders her disabled.

### A. Standards of Review

#### 1. Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard applied to a Rule 12(c) motion is the same as that applied to a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). To survive such a motion, "a

13

complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Id.* at 679. The court is limited "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

2.     Review of Determinations by the Commissioner of Social Security

Upon review of the final decision of the Commissioner, a court may enter "judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A district court must consider whether "there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Brault v. Social Sec. Admin., Com'r*, 683 F.3d 443, 447 (2d Cir. 2012) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). "[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks and citation omitted). "In determining whether the [Commissioner's] findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation marks and citation omitted).

Although the Commissioner's findings of fact are binding as long as they are supported by substantial evidence, this deferential standard of review is inapplicable to the Commissioner's conclusions of law or application of legal standards. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984). Rather, courts have a statutory and constitutional duty to ensure that the Commissioner has applied the correct legal standards, regardless of whether the Commissioner's decision is supported by substantial evidence. *See Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004). If a court finds that the Commissioner has failed to apply the correct legal standards, the court must determine if the "error of law *might* have affected the disposition of the case." *Id.* at 189 (emphasis added). If so, the Commissioner's decision must be reversed. *Id.*; *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the application of the correct legal standard could lead only to the same conclusion, the error is considered harmless and remand is unnecessary. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).

B.    Evaluation of Disability

Pursuant to 42 U.S.C. § 423(d)(1)(A), the term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability benefits are only available where an individual has a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). For the purposes of this section:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The regulations promulgated under the Social Security Act require the Commissioner to apply a five (5)-step sequential analysis to determine whether an individual is disabled under Title II of the Social Security Act. 20 C.F.R. § 404.1520; *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). The first step of the sequential analysis requires the Commissioner to determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) and (b). "Substantial work activity" "involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a). "Gainful work activity" "is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972(b). If a claimant is doing "substantial gainful activity," the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i) and (b). If the claimant is not engaged in any "substantial gainful activity," the Commissioner proceeds to the second step.

The second step requires the Commissioner to consider the medical severity of the claimant's impairment to determine whether he or she has a "severe medically determinable physical or mental impairment that meets the duration requirement in C.F.R. § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment, or combination of impairments, is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20

16

C.F.R. § 404.1520(c). To meet the duration requirement, the claimant's impairment must either be "expected to result in death, [or] it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The Commissioner will proceed to the next step only if the claimant's impairment is medically severe and meets the duration requirement.

At the third step, the Commissioner considers whether the claimant has a medically severe impairment that "meets or equals one of [the] listings in appendix 1 to subpart P of [20 C.F.R. Part 404 of the Social Security Act] and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment meets or equals any of the listings and meets the duration requirement, the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant is not found to be disabled at the third step, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity [("RFC")] based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e). The RFC considers whether "[the claimant's] impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). The RFC is "the most [the claimant] can still do despite [his or her] limitations." *Id.*

At the fourth step, the Commissioner compares the RFC assessment "with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv) and (f). If the claimant can still do his or her past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot do his or her past relevant work, the Commissioner proceeds to the fifth and final step of the sequential analysis.

At the fifth step, the Commissioner considers the RFC assessment "and [the claimant's] age, education and work experience to see if [the claimant] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work, the claimant is not disabled. *Id.* If the claimant cannot make an adjustment to other work, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). The claimant bears the burden of proving first four (4) steps of the sequential analysis, while the Commissioner bears the burden at the last step. *See Talavera*, 697 F.3d at 151.

C.      Application of the Five-Step Sequential Analysis

Plaintiff argues that the ALJ erred when he articulated contradictory reasoning in analyzing the fifth step of the five (5)-step analysis. Pl.'s Br. 12-16. The Commissioner responds that the record contains substantial evidence to support the ALJ's finding that plaintiff could perform other work, and to support his findings regarding plaintiff's residual functional capacity. Def.'s Br. 17-21.

The fifth step requires the Commissioner to determine whether significant numbers of jobs exist in the national economy that the claimant can perform in light of her specific vocational profile by weighing the claimant's residual functional capacity against her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). An ALJ may apply the Medical-Vocational Guidelines to make this determination. *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).

Here, plaintiff points out that the ALJ simultaneously found that she could work a significant number of jobs in the national economy, while also finding that she was "disabled" because her nonexertional limitations significantly narrowed the work available to her:

18

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. A finding of "disabled" is therefore appropriate under the framework of section 204.00 in the Medical–Vocational Guidelines. The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. These limitations so narrow the range of work the claimant might otherwise perform that a finding of "disabled" is appropriate under the framework of section 204.00 in the Medical–Vocational Guidelines. This conclusion is further supported by SSRs 96-8p and 96-9, which detail a claimant's residual functional capacity is based [sic] on sustained work activities on a regular and continuing basis (e.g., an eight-hour day, five days per week or equivalent schedule) and a substantial loss of ability to work at that level due to other restrictions substantially erodes the above occupational base and would justify a finding of disability.

The Court finds this reasoning inconsistent because it suggests that plaintiff's vision problems restricted her from most work, rendering her disabled, which contradicts the ALJ's ultimate conclusion to the contrary.

The Court cannot conclude on this record that the ALJ's Decision did not comes as a result of a mistake of law. *Pollard*, 377 F.3d at 188-89. For example, in reaching its seemingly inconsistent conclusions regarding plaintiff's disability status, the ALJ referenced SSR 85-15, which provides that vision problems are solely nonexertional, and arguably could support either conclusion here; while plaintiff has an associate's degree, the ALJ also found that she was approaching retirement age. *See* SSR 85-15, 1985 WL 56857 (Jan. 1, 1985) (explaining that finding of disability appropriate where claimant is "closely approaching retirement age, limited education or less, unskilled or no transferable skills, and essentially a lifetime commitment to a field of work in which good vision is essential"); 20 C.F.R. § 404.1563. Likewise, the ALJ's reference to SSR 96-8p, 1996 WL 374184 (July 2, 1996) in support of his conclusion that

19

plaintiff is disabled further illustrates the difficulties in reviewing the ALJ's Decision. This ruling states, "in assessing RFC for an individual with a visual impairment, the adjudicator must consider the individual's residual capacity to perform such work-related functions as working with large or small objects, following instructions, or avoiding ordinary hazards in the workplace." *Id.* It is unclear whether by this reference, the ALJ determined, in accordance with Dr. Stoller's RFC, that plaintiff was disabled because, for example she could not avoid ordinary workplace hazards. *Id.* at 182.

The ALJ's ultimate determination of whether plaintiff's vision problems in her left eye rendered her "disabled" within the meaning of the Social Security Act, turned on step five (5) of the five (5)-step analysis. This required the ALJ to assess plaintiff's specific vocational profile. 20 C.F.R. § 404.1520(a)(4)(v). However, the ALJ's inconsistent reasoning, coupled with his failure to articulate findings regarding plaintiff's specific vocational profile prevents a meaningful review and necessitates a remand. *E.g., Cichocki v. Astrue,* 729 F.3d 172, 177-78 (2d Cir. 2013) ("Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.") (citing *Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir.2001)). The Court, therefore, remands to the ALJ with instructions to clarify his reasoning with respect to step five (5) of the five-step analysis, 20 C.F.R. § 404.1520(a)(4)(v). In light of the Court's disposition, it does not reach the parties' remaining arguments. *E.g., Meadors v. Astrue,* 370 F. App'x 179, 185-86 (2d Cir. 2010).

III.    CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is denied and plaintiff's cross-motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is denied and this case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

s/ Sandra J. Feuerstein
Sandra J. Feuerstein
United States District Judge

Dated: September 30, 2015
      Central Islip, New York